PHYLLIS L. BABCOCK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Babcock v. Commissioner
Docket No. 16424-83.
United States Tax Court
T.C. Memo 1986-168; 1986 Tax Ct. Memo LEXIS 440; 51 T.C.M. (CCH) 931; T.C.M. (RIA) 86168; April 24, 1986. Jay Richard Rosner, for the petitioner. Theodore L. Marasciulo, for the respondent. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION JACOBS, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's Federal income tax: Additions to Tax
Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)
Sec. 6654 [1]
1975
$127.00
$0
$0
$0
1976
2,718.00
381.27
135.90
45.80
1977
2,689.00
368.27
134.45
20.56
1978
2,573.00
257.12
128.65
20.56
1979
4,935.05
661.05
246.75
86.67
1980
7,342.71
964.74
367.13
190.77
1981
4,167.00
418.17
208.35
159.51
*441 Further, respondent filed a motion seeking damages pursuant to section 6673. After concession by respondent, the issues for decision are (1) whether petitioner has a valid constitutional basis to refuse to pay Federal income taxes because of a conflict between her religious beliefs and the use to which the Government applies tax proceeds, (2) whether petitioner is subject to the additions to tax (a) for failing to file returns, (b) for failing to pay tax due to negligence or intentional disregard of the rules and regulations, and (c) for failing to pay estimated tax for the years in issue, and (3) whether damages should be awarded to the United States under section 6673. FINDINGS OF FACT Petitioner resided in Philadelphia, Pennsylvania, at the time she filed her petition. During the years in issue, petitioner received compensation as a school teacher. She also received unemployment compensation in 1980. Petitioner has been an active member of the Religious Society of Friends (Quakers) since 1978, having been an "attender" since 1971. The underlying *442 tenets on which Quakerism is premised include pacifism. Petitioner's faith dictates that she not participate, directly or indirectly, in war or in "war making" activities, or in the acquisition of weapons; accordingly, she refused to pay income taxes which would be used by the Government to fund the military or military activities. Petitioner filed a blank Form 1040 on October 20, 1976, for the 1975 taxable year, and blank Forms 1040 on September 11, 1979, for the 1976, 1977 and 1978 taxable years to which was attached a letter outlining her position. [2] She filed no returns for the years 1979 through 1981. Petitioner determined that approximately one-half of her tax liability would be used by the Government to fund non-military programs; therefore, she authorized an amount equal to one-half of her tax liability to be withheld from her salary. She has actively supported *443 legislation which would accommodate her beliefs, such as the World Peace Tax Fund Bill. [3] That Bill would create a separate fund to receive and expend taxpayers' funds for non-military purposes. OPINION Petitioner argues that the First Amendment to the Constitution permits her to withhold tax payments otherwise due when the activities to which the proceeds are applied conflict with her religious convictions. Otherwise, she argues, to compel her to pay taxes to support such activities would interfere with the free exercise of her religion. In cases of this sort, taxpayers have taken different approaches in attempts to obtain the same result. In some cases, taxpayers have claimed a deduction or credit reflecting their distaste for war. Graves v. Commissioner,698 F.2d 1219 (6th Cir. 1982), *444 affg. without published opinion a Memorandum Opinion of this Court; Lull v. Commissioner,602 F.2d 1166 (4th Cir. 1979), affg. Memorandum Opinions of this Court; First v. Commissioner,547 F.2d 45 (7th Cir. 1976), affg. a Memorandum Opinion of this Court; Greenberg v. Commissioner,73 T.C. 806 (1980); Anthony v. Commissioner,66 T.C. 367 (1976). [4] In other cases, taxpayers have simply refused to pay that percentage of the tax which they deemed would have been used for military purposes. Russell v. Commissioner,60 T.C. 942 (1973); Muste v. Commissioner,35 T.C. 913 (1961). In these cases, as well as in others, we have unequivocally rejected the argument that requiring taxpayers to pay taxes which would be used to support activities contrary to their religious beliefs deprives them of their constitutional right to free exercise of religion. *445 Petitioner argues that the standards set forth in United States v. Lee,455 U.S. 252 (1982), mandates a re-examination of the judicial inquiry into resolving a conscientious objector's conflict between adherence to his religious and moral beliefs and compliance with his obligation under the Federal income tax law. In Lee, the Supreme Court addressed the question of whether the imposition of social security taxes was unconstitutional as to an Amish employer who objected on religious grounds to receipt of public insurance benefits and to payment of taxes to support public insurance funds. In holding that there was no such constitutionally required exemption, the Court analyzed the problem by applying the following three step inquiry: 1.whether the payment of social security taxes interferes with the Amish religious beliefs; and if so 2. whether the burden on such religious beliefs is essential to accomplish an overriding governmental interest; and if so 3. whether accommodating the Amish belief unduly interferes with fulfillment of the governmental interest. The Court accepted the Lees' argument that the payment of social security taxes interfered with *446 their religious beliefs; however, the Court recognized the "difficulty in attempting to accommodate religious beliefs in the area of taxation" because "'we are a cosmopolitan nation made up of people of almost every conceivable religious preference.'" The Court then stated, "[t]o maintain an organized society that guarantees religious freedom to a great variety of faiths requires that some religious practices yield to the common good." 455 U.S. at 259. Finding that the broad public interest in maintaining the integrity of the social security system was of such a high order, the Court held that religious beliefs opposed to the payment of taxes to finance such system affords no basis to resist the tax. Petitioner argues that she is not seeking an exemption from tax, as were the Lees, but instead is asking to be allowed to pay her entire tax liability in a way that comports with her religious beliefs. Thus, she contends, the following statements made by Chief Justice Burger in Lee are not applicable in her situation: The obligation to pay the social security tax initially is not fundamentally different from the obligation to pay income taxes; the difference - *447 in theory at least - is that the social security tax revenues are segregated for use only in furtherance of the statutory program. There is no principled way, however, for purposes of this case, to distinguish between general taxes and those imposed under the Social Security Act. If, for example, a religious adherent believes war is sin, and if a certain percentage of the federal budget can be identified as devoted to war-related activities, such individuals would have a similarly valid claim to be exempt from paying that percentage of the income tax. The tax system could not function if denominations were allowed to challenge the tax system because tax payments were spent in a manner that violates their religious belief * * *. [Citations omitted. 455 U.S. at 260.] Petitioner argues that accommodating her religious beliefs by earmarking her tax payments for non-military expenditures would have no resultant harm to the tax system. By segregating her tax payments from the general funds so that none of her tax dollars go to finance military programs, petitioner contends, she may be included within the tax system and yet at the same time comply with her religious belief *448 not to support war. Petitioner's argument is based on the supposition that the mandatory payment of taxes, the proceeds of which might be used for military purposes, interferes with her free exercise of religious rights. That supposition is not correct. Objection on religious grounds to the manner in which the Government spends tax payments is not a basis upon which one can claim a constitutional right not to pay taxes. Muste v. Commissioner,supra;Russell v. Commissioner,supra.In Autenrieth v. Cullen,418 F.2d 586 (9th Cir. 1969), the Ninth Circuit stated: The Income Tax Act does not "aid one religion, aid all religions or prefer one religion over another." Nor does it punish anyone "for entertaining or professing religious beliefs or disbeliefs." [Citation omitted.] It taxes plaintiffs like all others, because they are citizens or residents who have taxable income. On matters religious, it is neutral. If every citizen could refuse to pay all or part of his taxes because he disapproved of the government's use of the money, on religious grounds, the ability of the government to function could be impaired or destroyed. *449 * * * There are few, if any, governmental activities to which some persons or groups might not object on religious grounds. [418 F.2d at 588-589.] In Muste, we said: the Constitution does not relieve a pacifist or a conscientious objector of the duty to pay taxes, even though they may be used for war or for the preparation for defense. Indeed, article I, section 8 of the Constitution specifically provides that the Congress shall have the power to lay and collect taxes and provide for the common defense and general welfare of the United States and to provide for and maintain an Army and Havy. This article and the 16th amendment to the Constitution empower the Congress to lay and collect taxes on incomes from whatever source derived. 35 T.C. at 919. It is Congress, and not this Court, that can give refuge to petitioner. The relief which petitioner seeks is contained in the proposed United States Peace Tax Fund Act. Accordingly, we hold that the conflict between petitioner's religious beliefs and the use to which the Government applies tax proceeds is not a proper basis on which petitioner may refuse to pay Federal income taxes. Further, *450 we hold that petitioner is liable for the additions to tax under sections 6651(a)(1), 6653(a), and 6654. Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed therefor unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Petitioner filed blank Forms 1040 for 1975, 1976, 1977, and 1978. These do not qualify as tax returns. Beard v. Commissioner,82 T.C. 766 (1984), on appeal (6th Cir. Sept. 24, 1984). Petitioner did not make even this effort for 1979, 1980, and 1981; she filed nothing for these years. The burden is on petitioner to show that this failure to file was due to reasonable cause and not willful neglect. She does not offer an argument to excuse her delinquency. The fact that petitioner sent a letter to respondent accompanying several of her blank Forms 1040 outlining her reasons for both not paying the tax due and not filing returns is adequate evidence on which to base a finding that she willfully neglected to file returns for all years in issue. See Muste v. Commissioner,supra.
Petitioner also has the burden of proving that none of *451 the underpayment was due to negligence or intentional disregard of the rules or regulations or else suffer the addition to tax provided for by section 6653(a). Harper v. Commissioner,T.C. Memo. 1973-214, affd. without published opinion 505 F.2d 730 (3d Cir. 1974). This she has failed to do. This is a situation where petitioner obviously knew of her legal obligation to pay income taxes yet believed she should not have to pay them. It is apparent to us that petitioner intentionally disregarded this obligation for each of the years in issue. See Doyle v. Commissioner,T.C. Memo. 1982-740, affd. without published opinion 742 F.2d 1433 (2d Cir. 1983); Hollingshead v. Commissioner,T.C. Memo. 1984-158. Section 6654 provides for an addition to tax where there has been an underpayment of estimated tax by an individual. The application of this addition to tax is absolute; there is no mental standard which need first be met. To the extent the minimum required installment of estimated tax exceeds the amount of tax deemed paid through withholding for each installment period (see section 6654(g)), petitioner is *452 liable for the addition calculated on this amount. Respondent's determination is sustained. Finally, respondent has requested that he be awarded damages under section 6673. Upon due consideration, we do not think section 6673 damages should be awarded in this case. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. In a letter dated September 11, 1979, petitioner stated that she had no tax liability nor duty to file returns because "I believe that the government's forcing me to pay taxes, when these monies are to be used for war and war preparation, would be forcing me to act against my moral and religious principles."↩
3. Since 1977, Senator Hatfield has introduced a bill (under the name World Peace Tax Fund Bill) to amend the Internal Revenue Code of 1954 to permit a taxpayer conscientiously opposed to war to have his income tax payments spent for non-military purposes. In 1985, Senator Hatfield's bill was introduced under the name U.S. Peace Tax Fund Bill. S.1468, 99th Cong., 1st Sess.; See 131 Cong.Rec. S9740-1 (daily ed. July 18, 1985).↩
4. See also Hollingshead v. Commissioner,T.C. Memo 1984-158; Gruber v. Commissioner,T.C. Memo 1983-259; Doyle v. Commissioner,T.C. Memo 1982-740; Senesi v. Commissioner,T.C. Memo 1981-723↩.